UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| **RICHARD G. WILSON,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:22-CV-66 PLC |
| | ) |
| **CITY OF BELLEFONTAINE** | ) |
| **NEIGHBORS, ET AL.,** | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendants City of Bellefontaine Neighbors, Officer Brian Rayford, and Sergeant John Laumeir's motion to dismiss certain claims in Plaintiff Richard Wilson's first amended complaint pursuant to Fed. R. Civ. P 12(b)(6).[1] [ECF No. 23] Plaintiff did not respond to Defendants' motion. For the following reasons, Defendants' partial motion to dismiss is granted.

**I.    Background**

The facts, as set forth in Plaintiff's first amended complaint, are as follows: Plaintiff, a state-licensed private investigator, attempted to effectuate service on April Crockett at a residence in the City of Bellefontaine Neighbors ("Defendant City") in April 2020. [ECF No. 21 at ¶¶ 8-9] Although Plaintiff had observed Ms. Crockett at the home, a woman, whom he believed was Ms. Crockett's mother, informed him that Ms. Crockett was not present and called the police. [Id. at ¶¶ 11-12]

---

[1] Although titled "Motion to Dismiss First Amended Complaint," Defendants' motion does not challenge all of Plaintiff's claims. [ECF No. 23]

1

Defendant Rayford, a police officer employed by Defendant City, responded to the residence. [Id. at ¶¶ 3, 15] Plaintiff "informed [Defendant Rayford] of the situation" and requested his assistance. [Id. at ¶¶ 13, 15] Defendant Rayford advised Plaintiff that "he searched the house and found no one inside." [Id. at ¶ 17] Plaintiff deemed this "a lie" because he had observed Ms. Crockett enter the house. [Id.]

When Plaintiff announced that he was leaving, Defendant Rayford ordered him to stop because he "needed to verify that [Plaintiff] was a process server." [Id. at ¶ 19] After examining the identifications Plaintiff wore around his neck, as well as the "court[-]issued subpoena [and] other documents showing he was licensed by the State of Missouri," Defendant Raymond told Plaintiff "I don't care a fuck," tightly handcuffed Plaintiff, and placed him in his patrol car. [Id. at ¶¶ 20-22]

Defendant Laumeir "arrived at the scene" and observed Plaintiff's hands "being bruised and bleeding from the excessive force and treatment of Officer Rayford." [Id. at ¶ 29] Defendants Rayford and Laumeir (collectively, "Defendant Officers") transported Plaintiff to the police station without advising him "of any rights or charges." [Id. at ¶ 31] When Plaintiff requested medical attention, Defendant Rayford "forcefully grabbed Plaintiff[,] placing him back in handcuffs" and in a jail cell "for hours." [Id. at ¶¶ 30-32] Defendants eventually charged Plaintiff with "Failing to Comply." [Id. at ¶ 34] The Court of St. Louis County dismissed the charge. [Id. at ¶ 35]

Plaintiff filed a petition in the Circuit Court of St. Louis County against Defendant Officers, in their individual and official capacities, and Defendant City, alleging: (1) "intentional deprivation of Plaintiff's civil rights under 42 U.S.C. § 1983" (Count I); (2) intentional infliction of emotional distress (Count II); and (3) false imprisonment (Count III). Defendants removed the case to this Court pursuant to 28 U.S.C. §§ 1331, 1441, and 1446. [ECF No. 1]

2

Defendants filed a motion to dismiss Plaintiff's original petition for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).  [ECF No. 12]   Specifically, Defendants urged the Court to dismiss Plaintiff's:  (1) Section 1983 claim against all Defendants because Plaintiff did not identify which federal statute or constitutional right the Defendants allegedly violated; (2)  Section 1983 claim against Defendant City because Plaintiff did not allege that the constitutional violation resulted from an official policy, unofficial custom, or deliberately indifferent failure to train or supervise; (3) intentional infliction of emotional distress and false imprisonment claims against Defendant City because it was entitled to sovereign immunity; and (4) intentional infliction of emotional distress against all Defendants because Plaintiff provided no facts supporting an allegation that Defendants' sole motivation was to cause him emotional distress.  [Id.]

In response, Plaintiff argued that he "should be granted leave to amend the [petition] as necessary to state a cause of action." [ECF No. 16]  In particular, Plaintiff asserted that the Court should permit him to amend the petition to the extent it failed to allege:  (1) that the unreasonable search and use of excessive force violated his rights under the Fourth Amendment; and (2) facts supporting a municipal liability claim based on a custom, practice, or policy.  [Id.]  Plaintiff further argued that he was entitled to discovery to determine whether Defendant City waived sovereign immunity and that he pleaded sufficient facts to state a claim for intentional infliction of emotional distress.  [Id.]

At the parties' Rule 16 scheduling conference on March 16, 2022, Plaintiff's counsel communicated his intent to file an amended complaint, and the Court urged him to file it as soon as possible.  [ECF No. 18]  Plaintiff filed a first amended complaint on May 16, 2022, the deadline for amendment of pleadings under the case management order.  [ECF Nos. 19, 21]   Although essentially identical to the original petition, the first amended complaint alleges in Count I that

3

Defendants violated Plaintiff's rights under Fourth, Fifth, and Fourteenth Amendments.

Defendants move to dismiss Plaintiff's first amended complaint, noting that Plaintiff "virtually changed nothing and failed to cure numerous deficiencies." [ECF No. 23 at ¶ 2] Plaintiff did not file a response.

## II.     Legal Standard

When ruling on a Rule 12(b)(6) motion to dismiss, a court must accept as true all of the factual allegations in the complaint and view them in the light most favorable to the plaintiff. Hager v. Ark. Dep't of Health, 735 F.3d 1009, 1013 (8th Cir. 2013). The federal rules require only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim satisfies the plausibility standard "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

## III.    Discussion

A.  Section 1983 Claim Against Defendant City

Defendants argue that Plaintiff failed to state claim against Defendant City for violation of his constitutional rights under Section 1983 because he did not allege that a policy, custom, practice, or failure to train or supervise caused the alleged deprivation of rights. "[A] municipality cannot be held liable [under Section 1983] on a respondent superior theory, that is, solely because it employs a tortfeasor." Atkinson v. City of Mountain View, Mo., 709 F.3d 1201, 1214 (8th Cir. 2013) (quotation omitted). "Section 1983 liability for a constitutional violation may attach to a

4

municipality if the violation resulted from: (1) an official municipal policy; (2) an unofficial custom; or (3) a deliberately indifferent failure to train or supervise." Id. (omitting internal quotations and citations). See also City of Canton, Ohio v. Harris, 489 U.S. 378, 388 (1989); Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978)).

For purposes of demonstrating municipal liability, "a 'policy' is an official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." Mettler v. Whitledge, 165 F.3d 1197, 1204 (8th Cir. 1999). A "custom" is an unofficial practice characterized by a "continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees." Id. "Generally, an isolated incident of alleged police misconduct … cannot, as a matter of law, establish a municipal policy or custom creating liability under § 1983." Ulrich v. Pope Cnty., 715 F.3d 1054, 1061 (8th Cir. 2013) (citing Wedemeier v. City of Ballwin, 931 F.2d 24, 26 (8th Cir. 1991)).

The allegations in Plaintiff's first amended complaint are insufficient to state a claim against Defendant City based on a policy, custom, or practice because Plaintiff alleges no facts to support this theory of liability. Plaintiff does not allege the existence of an unconstitutional policy, practice, or custom, much less facts demonstrating that Defendant Officers' alleged conduct resulted from such a policy, practice, or custom. See, e.g., Setchfield v. St. Charles Cnty., No. 4:21-CV-923 RLW, 2022 WL 579248, at *7 (E.D. Mo. Feb. 25, 2022).

A municipality may also be liable under Section 1983 if it failed to properly supervise or train an employee who caused a deprivation of constitutional rights where the failure to train or supervise rises to the level of deliberate indifference to the rights of others or tacit authorization of the offensive acts. See Canton, 489 U.S. at 380 (failure to train); Liebe v. Norton, 157 F.3d 574, 579 (8th Cir. 1998) (failure to supervise). Plaintiff alleges no facts in the first amended complaint

suggesting that Defendant City failed to provide adequate training or supervision. The Court therefore dismisses Plaintiff's Count I against Defendant City.

  B. Section 1983 Claim Against Defendant Officers

As an initial matter, the Court notes that Plaintiff alleges claims against Defendant Officers in their individual and official capacities. A suit against a government official in his or her official capacity is "another way of pleading an action against an entity of which an officer is an agent." Baker v. Chisom, 501 F.3d 920, 925 (8th Cir. 2007) (quoting Monell, 436 U.S. at 690 n.55). "[T]he real party in interest in an official-capacity suit is the governmental entity and not the named official[.]" Hafer v. Melo, 502 U.S. 21, 25 (1991); see also Elder-Keep v. Aksamit, 460 F.3d 979, 986 (8th Cir. 2006). "'[A] suit against a government officer in his official capacity is functionally equivalent to a suit against the employing government entity,' and therefore subject to dismissal." Wood v. City of St. Louis, No. 4:21-CV-462 CDP, 2022 WL 1211096, at *3 (E.D. Mo. Apr. 25, 2022) (quoting Veatch v. Bartels Lutheran Home, 627 F.3d 1254, 1257 (8th Cir. 2010)). See also Artis v. Francis Howell N. Band Booster Ass'n, Inc., 161 F.3d 1178, 1182 (8th Cir. 1998) (official-capacity claim against public official was correctly dismissed as redundant to claim against official's government entity employer).

Here, Plaintiff's claims against Defendant Officers in their official capacities are identical and therefore redundant to the claims he asserts against their employer, Defendant City. Moreover, for the reasons set forth above, Plaintiff failed to state a claim against Defendant City for municipal liability. The Court therefore dismisses Plaintiff's official-capacity claims against Defendant Officers. See, e.g., Caruso v. City of St. Louis, No. 4:16-CV-1335 RWS, 2016 WL 6563472, at *1 (E.D. Mo. Nov. 2016).

Defendant Officers urge the Court to dismiss Plaintiff's Section 1983 claim against them

to the extent Plaintiff bases his claim on violations of the Fifth and Fourteenth Amendments.[2] In regard to Plaintiff's claim that Defendant Officers violated his rights under the Fifth Amendment's Due Process Clause, Defendant Officers argue that the Fifth Amendment does not apply to state or municipal actors.

Defendant Officers correctly assert that the Fifth Amendment's Due Process Clause "applies only to the federal government or federal actions and does not apply to state and municipality actors as alleged here[.]" Jackson v. Stair, 944 F.3d 704, 709 (8th Cir. 2019) (citing Barnes v. City of Omaha, 574 F.3d 1003, 1005 n.2 (8th Cir. 2009)). See also Cheeks v. Belmar, 4:18-CV-2091 SEP, 2020 WL 5569982, at *10 (E.D. Sep. 17, 2020). The Court therefore dismisses Plaintiff's Fifth Amendment claims against the Defendant Officers in Count I.

Defendant Officers also move to dismiss Plaintiff's Section 1983 claim to the extent it asserts a violation of rights under the Fourteenth Amendment's Substantive Due Process Clause. Defendant Officers maintain that Plaintiff's "claim that his rights to substantive due process were violated [by] the arrest in question can only properly be brought pursuant to the Fourth Amendment." [ECF No. 24 at 7]

"[I]f a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." Cnty. of Sacramento v. Lewis, 523 U.S. 833, 841 (1998) (quotation omitted). The Supreme Court has held that "*all* claims that law enforcement officers have used excessive force – deadly or not – in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth

---

[2] Defendant Officers do not challenge Plaintiff's Section 1983 claim against them in their individual capacities for violation of Plaintiff's Fourth Amendment rights.

Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." Graham v. Connor, 490 U.S. 386, 395 (1989) (emphasis in original).

Plaintiff claims that Defendant Officers used excessive force and wrongfully arrested him. The Fourth Amendment covers this conduct. See Jackson, 944 F.3d at 709 ("the Fourteenth Amendment does not apply to excessive force claims involving arrests, which are appropriately reviewed under a Fourth Amendment analysis"); Cheeks, 2020 WL 5569982, at *11. The Court therefore dismisses Plaintiff's Fourteenth Amendment claims against Defendant Officers in Count I. Consequently, the sole remaining claim in Plaintiff's Count I is the individual-capacity claim against Defendant Officers alleging violation of Plaintiff's Fourth Amendment rights.

    C.  State-Law Claims Against Defendant City

Defendant City moves to dismiss Plaintiff's state-law claims for intentional infliction of emotional distress (Count II) and false imprisonment (Count III) on the ground that it is entitled to sovereign immunity. Under Missouri law, public entities are generally immune from state tort law claims under Missouri Revised Statutes § 537.600, except in three enumerated circumstances. See Martin v. Mo. Highway & Transp. Dep't., 981 S.W.2d 577, 579 (Mo. Ct. App. 1998). Specifically, sovereign immunity does not apply to claims: (1) arising out of the negligent operation of motor vehicles by public employees, § 537.600.1(1); (2) injuries caused by the dangerous condition of public property, § 537.600.1(2); or (3) when a political subdivision purchases liability insurance to cover tort claims other than those set out in § 537.600.1, in the amount of and for the purposes covered by the insurance purchased, § 537.610.1. Hammer v. City of Osage Beach, 318 F.3d 832, 841 (8th Cir. 2003); Brennan ex rel. Brennan v. Curators of Univ. of Mo., 942 S.W.2d 432, 434 (Mo. Ct. App. 1997).

"[I]n the absence of an express statutory exception to sovereign immunity, or a recognized common law exception such as the proprietary function and consent exceptions, sovereign immunity is the rule and applies to all suits against public entities[.]" Metro. St. Louis Sewer Dist. v. City of Bellefontaine Neighbors, 476 S.W.3d 913, 922-23 (Mo. banc 2016) (en banc). "[F]inding a municipality liable for torts is the exception to the general rule of sovereign immunity, and a plaintiff must plead with specificity facts demonstrating his claim falls within an exception to sovereign immunity." Parish v. Novus Equities Co., 231 S.W.3d 236, 242 (Mo. Ct. App. 2007).

Here, Defendant Officers correctly note that none of Plaintiff's allegations in Counts II and III invoke an exception to sovereign immunity. See, e.g., Setchfield, 2022 WL 579248, at *9–10; Perkins v. Frye, No. 4:20-CV-1433 HEA, 2020 WL 7263533, at *3–4 (E.D. Mo. Dec. 10, 2020). The Court therefore dismisses Plaintiff's Count II and III against Defendant City.

D.  Intentional Infliction of Emotional Distress (Count II)

Finally, Defendants urge the Court to dismiss Plaintiff's Count II for failure to state a claim for intentional infliction of emotional distress.  To state a claim for intentional infliction of emotional distress under Missouri law, a plaintiff must plead "extreme and outrageous conduct by a defendant who intentionally or recklessly causes severe emotional distress that results in bodily harm."  Gibson v. Brewer, 952 S.W.2d 239, 249 (Mo. banc 1997).  Moreover, the defendant's conduct must have been "intended only to cause extreme emotional distress to the victim." Id. (quoting K.G. v. R.T.R., 918 S.W.2d 795, 799 (Mo. banc 1996)). "Indeed, a claim for intentional infliction of emotional distress 'will not lie where the alleged conduct is intended to invade other legally protected interests of the plaintiff or intended to cause bodily harm.'" Irons v. Neske, No. 4:21-CV-293 RWS, 2021 WL 4191614, at *8 (E.D. Mo. Sept. 15, 2021) (quoting K.G., 918 S.W.2d at 799).  See also Blakeney v. City of Pine Lawn, Mo., No. 4:19-CV-2017 SNLJ, 2020

WL 4569175, at * 8 (E.D. Mo. Aug. 7, 2020) ("Having failed to allege any misconduct by defendants that was solely intended to cause emotional distress, plaintiff's emotional distress claims fail.") (internal citation omitted).

In the first amended complaint, Plaintiff alleges that:  (1) Defendant Officers acted "recklessly or with the intent of causing the Plaintiff severe emotional distress"; (2) the conduct "was extreme and outrageous"; and (3) Plaintiff "incurred severe emotional distress because of the conduct." [ECF No. 21 at ¶¶ 37-39]   Plaintiff does not allege, however, that the sole purpose of the alleged misconduct was to cause him extreme emotional distress.  Nor do the allegations in the first amended complaint support an inference that the alleged conduct was intended only to cause extreme emotional distress.   See Gibson, 952 S.W.2d at 249; Irons, 2021 WL 4191614, at *8-9; Blakeney, 2020 WL 4569175, at * 8.  The Court therefore dismisses Plaintiff's Count II for failure to state a claim for intentional infliction of emotional distress.

### IX. Conclusion

For the reasons set forth above, the Court dismisses Count I against:  (1) the City; (2) Defendant Officers in their official capacities; and (3) Defendant Officers to the extent it is based upon violations of the Fifth and Fourteenth Amendments.  Additionally, the Court dismisses Count II in its entirety and Count III against Defendant City.  As a result, the claims that remain pending are:  (1) Count I against Defendant Officers in their individual capacities for violations of the Fourth Amendment under Section 1983; and (2) Count III for false imprisonment against Defendant Officers.

After careful consideration,

**IT IS HEREBY ORDERED** that Defendants' motion to dismiss [ECF No. 23] is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's official-capacity claims against Defendant Officers are **DISMISSED**.

**IT IS FURTHER ORDERED** that Count I is dismissed as to Defendant City.

**IT IS FURTHER ORDERED** that Count I is dismissed as to Defendant Officers only to the extent it asserts violations of the Fifth and Fourteenth Amendments.

**IT IS FURTHER ORDERED** that Count II is dismissed as to all Defendants.

**IT IS FINALLY ORDERED** that Count III is dismissed as to Defendant City.

_____
PATRICIA L. COHEN
UNITED STATES MAGISTRATE JUDGE

Dated this 1st day of September, 2022